The Dixie Grain Company v. Commissioner.
Dixie Grain Co. v. Commissioner
Docket No. 6552.
United States Tax Court
1946 Tax Ct. Memo LEXIS 52; 5 T.C.M. (CCH) 887; T.C.M. (RIA) 46248; October 23, 1946
*52 Under the facts, held, gains and profits from dealing in commodity futures through petitioner's account and in its name are gains and profits of two of its officers and are not includible in petitioner's income. Albert W. Taber, Esq., and Charles L. Claunch, Esq., 1023 Chattanooga Bank Bldg., Chattanooga, Tenn., for the petitioner. Edward L. Potter, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: This case involves deficiencies determined by the respondent as follows: Calendar
Calendar
Year 1941
Year 1942
Income Tax
$2,533.93
Declared Value Excess
Profits Tax
1,487.92
$ 288.31
Excess Profits Tax
4,298.38
6,160.15
The question presented is whether respondent erred in including in petitioner's taxable income for the calendar years 1941 and 1942 gains from trading in commodity futures through a trading account with brokers in petitioner's name. Petitioner contends the gains were those of two of its officers. The case was submitted on oral testimony and documentary evidence from which we make the following. Findings of Fact Petitioner was incorporated in 1906 under the laws of the *53 State of Tennessee. Its principal place of business is Shelbyville, Tennessee. It filed its returns with the collector of internal revenue for the district of Tennessee. Its principal business is that of buying, selling and dealing in grains, flour, meal and stock feeds, cotton ginning and manufacturing stock and poultry feeds. During the calendar years 1941 and 1942 its officers were: H. C. Tilford, Sr., president and treasurer; W. B. Woosley, vice-president, and H. C. Tilford, Jr., secretary, all of whom were actively engaged in the business and together with Lillian M. Tilford, wife of H. C. Tilford, Sr., and Lula Woosley, wife of W. B. Woosley, constituted its board of directors. It had outstanding 150 shares of capital stock, 75 of which were held by Tilford, Sr., and 75 by the estate of H. L. Woosley, deceased. H. L. Woosley died in 1935. He was the father of W. B. Woosley. The H. L. Woosley stock was never transferred on the books of the company to the estate or the beneficiaries of the estate. W. B. Woosley was trustee of the estate's 75 shares, one-half of which went to him outright and one-half remained in trust for the benefit of the widow of H. L. Woosley during her *54 life-time, with remainder to W. B. Woosley, the son. In 1940 and 1941 and for sometime prior thereto, Mrs. H. L. Woosley, the widow, was in bad health and in a nervous condition. She was critical of her son who was trustee of her interest in her deceased husband's estate. She was critical of Tilford, Sr., and the conduct of things generally. Her criticisms and fault-finding were a source of annoyance. She had threatened to get a lawyer to wind up the estate. In this situation Tilford, Sr., and W. B. Woosley decided it would be best for petitioner to cease making commodity trades in futures and confine its operations to its principal business activities. For several years prior to 1941 petitioner had effected some commodity transactions on its own account through Courts & Co., of Chattanooga, Tennessee, brokers, and its predecessor. In the year 1940 it suffered some $9,000 in losses on commodity transactions and realized some $8,500 in gains. The transactions for 1940 were the largest in amount that petitioner had ever had. The results of the 1940 transactions made the directors of petitioner realize that the commodity trading was involved in considerable speculative risk and prompted *55 them to take action in regard thereto. A directors' meeting was held on January 10, 1941, in the office of petitioner in Shelbyville, present at which were: H. C. Tilford, Sr., H. C. Tilford, Jr., and W. B. Woosley, constituting a majority of the members of the board. The following minutes were unanimously adopted: January 10, 1941. The Directors of the Dixie Grain Company, at a meeting on the above date in their office, H. C. Tilford. Sr., W. B. Woosley and H. C. Tilford, Jr., directors, being present. Various matters of business were discussed. A motion was made by H. C. Tilford, Jr., and seconded by W. B. Woosley, that at any time H. C. Tilford, Sr., or W. B. Woosley wanted to, that they could instruct H. C. Tilford, Sr., president, to place trades in their accounts for cotton, grain or other commodities on the Board of Trade, either long or short, stating at the time orders were executed for whom the order was made, either individual or joint account. The motion was unanimously carried. It was stated at the meeting that there were two reasons why this motion was made. The first one was that the firm of Dixie Grain had an established rating and it was easier for them *56 to finance transactions than it was for the individuals. The second reason was that the Woosley estate owns an interest in the Dixie Grain Company and it was felt that the estate should not be made to take any undue risk on account of speculative trades and if any risk was incurred, it should be by H. C. Tilford and W. B. Woosley who should personally assume the responsibility, this order to remain in effect until cancelled by Board. (Signed) H. C. Tilford, Sr., President, W. B. Woosley, Vice-President, H. C. Tilford, Jr., Secretary. Prior to January 10, 1941, Tilford, Sr., and W. B. Woosley had engaged in commodity trades through the broker in an account carried in their joint names. This account was closed out in January 1941. After January 10, 1941, the procedure as to commodity trades was that Tilford, Sr., and Woosley would get together and decide to buy or sell grain or cotton on the Board of Trade. The broker was then called by telephone and instructed to execute the order through the account which was continued in the name of petitioner. When the purchase or sale was effected and the "broker's ticket" came in, Tilford, Sr., would mark the ticket to the effect that it *57 was for the account of himself and Woosley. When a sale was made, he would personally enter the gain or loss thereon on a ledger account in the books of petitioner carried in the name of "H. C. Tilford Sr. and W. B. Woosley" charging the account with the losses and crediting the account with the gains. The account was frequently inspected and discussed in the years 1941 and 1942 by Tilford, Sr., and W. B. Woosley. Tilford, Sr., gave Woosley detailed reports of all trades and of profits and losses. Woosley never questioned the correctness of the account or made any criticisms. The net gains realized through the account in 1941 were $11,860 and in 1942, $6,136.25. In the latter part of 1940 or the early part of 1941 Tilford, Sr., discussed with W. B. Greever, manager of the Courts & Co. office in Chattanooga, the conditions under which he and Woosley might carry on trading in commodity futures in petitioner's name and account with the brokers. He was advised that trades could be conducted in the name of petitioner if records were kept identifying the parties in interest. At all times during 1941 and 1942 petitioner's books showed substantial balances to the credit of Tilford, Sr. *58 , and W. B. Woosley, representing money available for use by petitioner except for the period January 29, 1941 to February 1, 1941, when the debit balance was in the amount of $56.25. Both were men of means and had loaned petitioner substantial sums for which they took petitioner's notes. The net gains on the commodity transactions in 1941 and 1942, effected after January 10, 1941, were disbursed by petitioner to Tilford, Sr., and Woosley by checks of $4,000 to each on May 29, 1941 and by check to Tilford, Sr., for $4,998.13, and check to Woosley for $4,998.12 on February 24, 1943. Each of these men reported his respective shares of the gains realized through the commodity trading account in his individual tax returns for 1941 and 1942 showing they were handled through petitioner. All during the year 1941 and for a substantial portion of 1942 petitioner was indebted to Tilford, Sr., and W. B. Woosley on notes for money loaned to petitioner by said individuals or for sales for which the notes were given. Petitioner paid interest on all said notes excepting notes given on account of salary. All obligations of petitioner to the bank with which it did business continuously since March *59 1938, and through the taxable years were guaranteed by Tilford, Sr., and W. B. Woosley. At the close of 1940 petitioner was indebted to said bank in the amount of $3,000, at the close of 1941 in the amount of $10,000, and at the close of 1942 in the amount of $5,000. Very little time of Tilford, Sr., and W. B. Woosley, or of any other officer or employee of petitioner was spent in handling or looking after the commodity trading account in 1941 and 1942. Petitioner never hedged on any of the cotton or grain business. It had effected some trades in commodities as agent for others through its account with the brokers. It had an established credit with Courts & Co., for trading in commodity futures. The gains and profits realized from the trading in commodity futures during the taxable years belonged to H. C. Tilford, Sr., and W. B. Woosley, and petitioner had no interest therein. Opinion The question for our consideration is one of fact, that is - were the gains and profits in question those of petitioner, as determined by respondent, or of H. C. Tilford, Sr., and W. B. Woosley, two of petitioner's officers, as contended by petitioner? The amount of the gains and profits is not *60 in dispute. Petitioner argues that as the estate of H. L. Woosley was involved in the business, and trading in commodity futures was speculative, and on account of the attitude of the widow, it was decided that the corporation should cease trading in commodity futures and confine itself strictly to its regular business; that the corporate action taken at the directors' meeting on January 10, 1941, prohibited it from further dealing in commodity futures, and that it did no trading in commodity futures thereafter. Petitioner contends that thereafter all trading in commodity futures in the corporation's name was carried on by Tilford, Sr., and Woosley, as individuals, for their individual use and benefit and they alone were the owners of the gains and profits in question and petitioner had no interest therein to any extent. The respondent argues that the individuals had no need to use the corporation's brokerage account, as they had individual accounts with the same brokers, and were men of considerable means; that the corporation had for several years made purchases and sales of commodity futures through the same brokers and the transactions in 1941 and 1942 were those of petitioner. *61 We have found as a fact that the gains and profits in question were those of Tilford, Sr., and W. B. Woosley and that petitioner had no interest therein. We think the facts and circumstances of record amply support this finding. While the language of the resolution adopted at the directors' meeting of January 10, 1941, does not specifically prohibit further dealing in commodity futures by the corporation, at least it authorized Tilford, Sr., and Woosley, as individuals, to use petitioner's account with the brokers and trade in its name. The minutes explain the action, showing that the directors intended that the estate, which owned half the stock, should no longer be subjected to the speculative risk of these trades on the part of the corporation. We think this explanation is reasonable. The petitioner's account with the brokers was thereafter used only for joint trades of the two officers. Tilford, Sr., personally handled the transactions through the brokers and noted on the broker's ticket that they were for the account of himself and Woosley. He entered the gain or loss thereon on a ledger account in petitioner's books carried in the name of "H. C. Tilford, Sr., and W. B. Woosley" *62 charging the account with the losses and crediting the account with the gains. At all times except for a period of about two days in January 1941, when the debit balance was $56.25, petitioner's books showed substantial balances in the credit of these officers, and both were men of considerable means. Petitioner disbursed to them the net gains from all the commodity transactions during the taxable years and did not share therein nor profit thereby. These men reported their respective shares of the gains in their income tax returns for the years 1941 and 1942. We think the action of the directors on January 10, 1941, clearly shows an intention that the corporation cease trading in commodity futures. That intention was confirmed by the subsequent conduct of the parties. Petitioner for its own account did no trading in commodity futures thereafter. It has frequently been held that taxation is a practical matter and the incidence of the tax attaches to him who earned the income or owns the property or the right which produces it. Notwithstanding the fact Tilford, Sr., and W. B. Woosley were officers and directors of petitioner and carried on the trading in the name of petitioner and *63 through its account with the brokers, the gains and profits here in question were those of the two individuals and are not includible in petitioner's gross income. Cf. ; ; ; ; , and . Decision will be entered under Rule 50. *
Footnotes
*. Decision for petitioner changed to decision under Rule 50 pursuant to order dated November 12, 1946.↩